WILL COVINGTON v. THE STATE.

No. 4490.    Decided February 13, 1918.

**Assault to Murder—Continuance—Admission by State Counsel.**

Where the defendant sought a continuance for the testimony of certain absent witnesses, and the State admitted certain portions of this testimony, but did not admit certain testimony in the application for continuance which was material to the defense, in that it related to the questions at issue and especially as to the defendant and the party injured in showing that there was no ill-feeling between them, the continuance should have been granted.

Appeal from the District Court of Decatur. Tried below before the Hon. F. O. McKinsey.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Ratliff & Spencer,* for appellant.—Cited Wade v. State, 75 Texas Crim. Rep., 572, 172 S. W. Rep., 215; Medford v. State, 76 Texas Crim. Rep., 250, 174 S. W. Rep., 607; Harris v. State, 76 Texas Crim. Rep., 155, 172 S. W. Rep., 1146; Mansell v. State, 79 Texas Crim. Rep., 48,

182 S. W. Rep., 1137; La Fell v. State, 69 Texas Crim. Rep., 307, 153 S. W. Rep., 884.

*E. B. Hendricks,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of assault to murder and allotted two years confinement in the penitentiary.

The State's theory was that in a certain store house in the town of Decatur appellant shot at Harry Beard with intent to kill him. The defendant's theory was that he did not shoot at him, and that while his pistol fired twice, the first shot was accidental, and the other shot was fired while he was holding the pistol in the air. There is a good deal of testimony with reference to the condition of things in the store. Photographs were taken and introduced showing where a bullet struck, supposed to have been shot at Beard. Appellant denied shooting at Beard, and testified to the fact that he did not; that they were friends; that he had nothing against him, and there was no purpose of shooting Beard or injuring him. There was also an issue, if he did shoot at Beard, or was attempting to shoot at him, whether it was an assault to murder or aggravated assault. Both issues were submitted to the jury. There was another matter raised by the evidence, it occurs to the writer, which is not mentioned in the record, that is, the display of a deadly weapon with intent to alarm. That, however, is not suggested by appellant, and no charge was asked or given in regard to the matter, and the question seems not to have been discussed in the trial of the case.

Appellant sought a continuance for the testimony of Harry and Ted Beard. To avoid this the State admitted that if these witnesses were present they would testify as set out in the motion, except as to certain portions of the proposed testimony marked with parentheses, and it is stated that the State's admission did not apply to these clauses set out in the application for continuance. Such matters as the State agreed might be used were read, to the effect that if Harry Beard was present he would testify he was in the Cash Grocery Store at the time and place mentioned; that they had been together practically the whole evening on the day of the difficulty; that appellant was subsequently arrested, and made bond within about one-half hour after the shooting, and immediately after making bond defendant, Harry and Ted Beard left town riding in the same buggy, which buggy belonged to Harry and Ted Beard, and returned to their respective homes east of Decatur, and at that time there was no ill-feeling between Harry Beard and appellant. That Ted Beard would testify that defendant gave bond on the day the assault is alleged to have been committed within an hour thereafter, and that he, in company with Harry Beard and defendant, in the same buggy belonging to the Beards, left town and went to their homes east of Decatur about four miles, and that defendant and Harry Beard were friendly all the time, and there was nothing in their conduct or con-

versation showing any ill-feeling between them. That both of the Beards would testify that a short while before the assault that appellant was injured in an automobile wreck, and defendant was on crutches at the time the assault is alleged to have occurred, and that during the injury to defendant Harry Beard attended defendant, sat up with him at night, and assisted in looking after his affairs. That Harry Beard would also testify further, that immediately after the shots were fired he went to Sellar's store and met Ted Beard, and told Ted Beard to go tell defendant to come on and go home as soon as he made bond; that he waited at said store until defendant made bond and they returned home with him. And that Ted Beard will testify that immediately after the shots were fired at the grocery store he met Harry Beard, who sent him to defendant to inform him as soon as he made bond to come and go home, and thereafter defendant and said witnesses returned home together.

The above testimony was admitted as being true. Before taking up the excerpts from the motion which were not permitted to go to the jury, it may be stated that the court did not in his charge instruct the jury that this admitted testimony would be taken as true. Appellant requested an instruction to that effect, which the court did not give. It is claimed by the court that verbally he did instruct the jury to that effect at the time.

Excerpts of testimony in the motion which were not permitted to go to the jury are thus stated: "That at said time (at the time of the shooting) there was no trouble existing between he, the said Harry Beard and the defendant; and that there was no ill-feeling between them, and that nothing had occurred which would cause any ill-feeling or malice between them, and that said witness Beard knew of no reason why defendant should make an assault on him; that prior thereto there had been no quarrel or trouble of any kind between them. That there existed at the time the assault is charged nor before no grudge or difference between defendant and said witness Beard; and said Harry Beard will further testify that when the shots were fired by defendant constituting the alleged assault that so far as he knows they were not fired at him, and that nothing existed between defendant and the witness to cause defendant to make an assault upon him. That Beard will testify that he and defendant are good friends, have always been so, and no malice now exists or has heretofore existed between them. That in said conversations the defendant at all times assured the witness Harry Beard that he was not shooting at him, and that said witness Harry Beard assured defendant that he knew that he, defendant, had no malice against him and was not shooting at him, said Beard." This last extract referred to the shooting.

"That the said Ted Beard will further testify that he knows of his own knowledge that defendant and said Harry Beard were good friends,

that he had been in company with them immediately before the assault is charged, and that there was no ill-feeling or bad feeling existing between them, and thereafter nothing occurred to separate the friendship between defendant and said Harry Beard. Said witness Harry Beard will testify that after the shots were fired in the Cash Grocery Store upon which this assault is predicated when he first met defendant thereafter, which was as soon as defendant executed a bond to the officers, the first thing defendant said was, 'that was a lie about me shooting at you,' to which the witness Beard replied, 'I know that,' and immediately without further conversation they went to the buggy, got in same and drove home together. That said Harry Beard will testify if present, that immediately after the shots were fired, while he was still in the Cash Grocery Store and while defendant was in there before an arrest was made of defendant and while the defendant was standing where the shots were fired, that he, the said Harry Beard, walked up to defendant and asked him, 'Bill, what was that shooting about?' and that said witness Harry Beard will testify at that time he did not think or believe and does not now think or believe that said defendant was shooting at him, the said Harry Beard. That all of said testimony is material to defendant's defense," etc.

These excerpts are set out in the continuance together with the testimony admitted as being the testimony of the two Beards. We are of opinion this testimony was material, and was germane and proper to have gone to the jury as to the existing feeling between the parties at the time. They had been friends, and no difficulty had occurred and nothing to show, as far as this application is concerned and the statements of the parties, that there was any ill-feeling between them at the time the shots were fired. If Harry Beard was in the store at the time the shots were fired, and the State's theory was that one of them was fired at him, he would certainly have known whether defendant was shooting at him, and ought to be able to tell some reason why he was so shooting. And certainly it was legitimate testimony for the defendant to show, immediately after the shooting and while still in the store where it occurred, what occurred between them with reference to the shooting, and the conversations that occurred between them. It was clearly res gestae as it was immediately after the shooting and almost in connection with it. The court says this testimony, if testified as stated, would not probably be true. With the testimony admitted by the State to be true, which went before the jury, we are of opinion the rejected testimony was material. It bore upon the same question, and was explanatory of it, and especially as to their feeling toward each other. Appellant's theory was that he did not shoot at him; that he had no reason for shooting at him, and no cause for it, and that he did not in fact shoot at him. Taking these matters together, the fact they were friendly up to the time of the shooting and immediately after

the shooting, within a few minutes, which seems not to be denied, and that appellant got in the buggy with the two Beards, one of them who was the alleged assaulted party, and drove out to their homes in the country east of town, we are of opinion that the excluded testimony, especially in the light of the admitted testimony, was material, germane and explanatory, and not only so, but it was evidence of the parties themselves to the supposed difficulty, showing that there was no trouble between them, and that Beard himself did not understand he was being shot at.

There are quite a number of bills of exceptions which are hardly sufficiently stated to require reviewing. Upon another trial these matters may not occur. If they do, the bills of exception will be more explicit. We are of opinion appellant was entitled to his continuance. These were State's witnesses, and if Harry Beard was shot at, or supposed to be friendly to the State, their absence was not imputed to appellant, nor sought to be.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*